**STATE of Missouri, Respondent,**

v.

**James Russell DRANE, Appellant.**

**No. 52259.**

Supreme Court of Missouri,
Division No. 1.

June 12, 1967.

Motion for Rehearing or to Transfer to Court en Banc Denied July 10, 1967.

Norman H. Anderson, Atty. Gen., Jefferson City, Richard G. Altobelli, Special Asst. Atty. Gen., St. Louis, for respondent.

Stewart & Bruntrager, Raymond A. Bruntrager, Joseph G. Stewart, St. Louis, for appellant.

HOUSER, Commissioner.

James Russell Drane was charged with driving, operating and using a Cadillac motor vehicle, without the permission of the owner thereof, Forrest Leasing Company, "in the care and custody of James B. Hill," § 560.175, V.A.M.S. Convicted by a jury, he was sentenced to 3 months' imprisonment in the workhouse of the City of St. Louis and fined $100, and has appealed from the judgment of conviction.

The state's case tended to show that the Cadillac was leased by Forrest Leasing Company to James B. Hill and Company, a corporation; that lessee's president, James B. Hill, had possession and custody of the vehicle, which disappeared from the place where it was parked on the street in front of Mr. Hill's apartment in St. Louis; that no one but Mr. Hill had permission to use or operate the Cadillac and that Mr. Hill had not given defendant permission to do so; that the Cadillac was thereafter found in the possession of defendant, who had been driving, operating and using it for several days prior to his arrest.

Drane's defense to the charge was based on the theory that he had in good faith purchased the Cadillac from Lindberg Cadillac Company and that he had legal title to the automobile. He testified that he went to the Lindberg auto agency, looked at numerous vehicles there offered for sale; that as he was leaving he was met by a well-dressed man who appeared to be, acted like and said that he was a salesman for Lindberg Cadillac Company; that the man showed him the Cadillac in question, invited him to take a demonstration ride; that he became interested in buying it; that the "salesman" first asked $5,200 for the automobile; that defendant pointed out that the car had 16,000 miles on it and that the leather on the front seat was badly worn; that the "salesman" said that he would go inside and "talk to his boss about it, and see what he could do" for him; that the "salesman" went into the company office and came back saying that if there was no trade-in he could let defendant have it for $4,200; that defendant agreed and paid the man $600 in cash, for which defendant received a receipt; that the "salesman" wrote defendant's name

and address on a clipboard he was carrying and told him to wait while he went inside and had the cashier type up the papers; that the "salesman" returned to the lot saying that the cashier was "pretty busy" and that he would have the papers typed and bring them and the car to defendant's house the next day; that the next day the "salesman" brought the automobile to defendant's home, delivered to him a form of application for Missouri certificate of title and license, and that defendant paid him the balance of $3,600 in cash and took possession of the automobile. The typed-in form recited that Lindberg Cadillac Company was the legal owner of the vehicle. The seller's signature ("Lindberg Cadillac Co.") was typed in, and underneath the typing there was a name in handwriting, together with the purported certificate and seal of Pearl R. Scott, described therein as a notary public, showing that the document had been subscribed and sworn to before the notary. Based on this paper the Director of Revenue of the State of Missouri issued to defendant a certificate of title to the Cadillac, and defendant paid the state $126 sales tax, $22.92 license fee and $1 title fee. On these facts defendant claimed that he was the true owner of the Cadillac.

It is indicated that the Cadillac had not been the property of Lindberg Cadillac Company; that there was no such salesman in its employ; that there was no such notary registered in St. Louis, and it appears that if defendant's story is true he is not guilty of the charge and that he was bilked out of $4,200.

The case was submitted to the jury under an instruction authorizing a verdict of guilty upon a finding that defendant unlawfully, wilfully and feloniously did drive, use and operate a certain 1964 Cadillac automobile, the property of Forrest Leasing Company, Incorporated, a corporation, without the permission of the leasing company so to do, "in the care and custody of James B. Hill," and authorizing an acquittal unless the jury so found all the facts to be.

No instruction was offered or given recognizing the defense of driving and operating an automobile in good faith in the honest belief that the defendant had good legal title by purchase.

Defendant makes the point that the court erred in giving the foregoing instruction because it ignored his defense, and that the court thereby failed to instruct upon all questions of law arising in the case, as required by Criminal Rule 26.02, V.A.M.R. and § 546.070(4), V.A.M.S. This contention must be sustained.

Criminal Rule 26.02 requires the court to instruct the jury upon "all questions of law necessary for their guidance in returning their verdict." An instruction which purports to cover the whole case but which entirely ignores a defense supported by evidence is erroneous and constitutes reversible error. State v. Dougherty, 358 Mo. 734, 216 S.W.2d 467 [9]; State v. Winn, Mo.Sup., 324 S.W.2d 637 [2]; 23A C.J.S. Criminal Law § 1317, and Missouri cases there cited. "[A]ll questions of law necessary for their guidance" include the presentation of the defendant's theory of the case as well as that of the state. An instruction "should guide them fairly, should present both sides of a proposition if it has two sides," State v. Harris, 232 Mo. 317, 134 S.W. 535, 536, and where there is evidence to support a defense the instruction should as plainly and fairly hypothesize the defense as it does the question of guilt. State v. Webster, Mo.Sup., 230 S.W.2d 841.

This principle has been frequently applied. In State v. Busch, 342 Mo. 959, 119 S.W.2d 265, a conviction of stealing cattle was reversed for failure of the main verdict-directing instruction to submit or take into consideration accused's defense that he did not know that the cattle were being stolen and was hauling them in good faith for hire. In State v. Collins, 292 Mo. 102, 237 S.W. 516, a conviction of grand larceny of a stray cow, an instruction omitting any reference to the defendant's main defense

(that he had a stray animal that resembled the cow taken, and believed that the cow was his property) was held to constitute reversible error. In State v. Slusher, 301 Mo. 285, 256 S.W. 817, defendant was charged with stealing a rowboat. Defendant testified that he purchased the boat. The instruction ignored the defense. The attorney general confessed error and the judgment was reversed on this ground, the court saying, 256 S.W., l. c. 819: "The vice of the instruction is that it purports to cover the whole case, and authorizes a verdict without taking into consideration the defenses offered by the defendant to the effect that he bought the boat—came by it honestly. Under section 4025, R.S.1919, whether requested or not, the court must instruct on all questions of law arising in the case, and that means the court should present to the jury the defendant's theory of the case, as well as that of the state." In State v. Johnson, 334 Mo. 10, 64 S.W.2d 655, where the charge was forgery of a note and the defense was that defendant had authority to sign the note, an instruction ignoring the defense was held to constitute reversible error. In State v. Webster, Mo. Sup., 230 S.W.2d 841, the charge was stealing hogs. The defense was that defendant's father was entitled to the hogs and that defendant innocently took and sold them at his father's request. The verdict-directing instruction ignored the defense, although it did contain the words "without any honest claim thereto." Notwithstanding these latter words this court reversed a conviction for failure of the instruction to submit the defense that defendant innocently acted under the belief that his father owned the hogs. In State v. Gale, Mo.Sup., 322 S.W.2d 852, a prosecution for stealing two tires, the verdict-directing instruction did not refer to the defense that at the time the tires came into defendant's possession he discontinued the use of the tires and planned to contact the alleged owner to learn what disposition was to be made of them. (See § 560.156, subd. 3, V.A.M.S.) The judgment was reversed for failure to properly instruct the jury on the defense which is accorded under the statutory provision, where the property stolen is a chattel and the accused comes into its possession under circumstances showing that he had no intention of stealing it. In the case here for review there was ample substantial evidence to sustain the defense but the defense was not referred to in the instructions. The main verdict-directing instruction purported to cover the whole case but it ignored this amply supported defense. This constituted reversible error.

Other errors are assigned as follows: in permitting state's witness Hill to testify as to the contents of the lease of the automobile because the lease was the best evidence of its contents and there was no showing that the lease was not available; in failing to direct an acquittal for failure of the state to prove ownership in Forrest Leasing Company, as charged in the indictment; and in permitting the state in cross-examination of the defendant to go outside the scope of the direct examination. Since the judgment of conviction must be reversed for error in instructing the jury, and since none of the other claims of error, if sustained, would result in an outright reversal without remand, see State v. Walker, Mo. Sup., 365 S.W.2d 597, 602 [8]; State v. Watson, Mo.Sup., 350 S.W.2d 763, 768 [4], we need not notice the other assignments of error, except to suggest that all controversy about these questions can be avoided in case of a retrial by the state introducing in evidence the certificate of title in the name of Forrest Leasing Company, if there be one; by producing a representative of the leasing company to testify that this defendant was not given permission by the leasing company to drive and operate this automobile, if that be true; by introducing in evidence the trust lease agreement, and by observing the admonition of § 546.260, V.A.M.S., that a person on trial who testifies in his own behalf is liable to cross-examination "as to any matter referred to in his examination in chief," as that section

has been interpreted in State v. Pierson, 331 Mo. 636, 56 S.W.2d 120, 123 [5].

Judgment reversed and cause remanded.

WELBORN and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.